UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DIANE CONMY and MICHAEL B. REITH,

    Plaintiffs,

v.                                                                                              Case No. 4:04-CV-105

AMTRAK, CITY OF KALAMAZOO, JOHN                      HON. GORDON J. QUIST
DOE and LAMPOON, INC.,

    Defendants.
    _____/

## **OPINION**

In this wrongful death action, Diane Conmy and Michael B. Reith (Plaintiffs), representatives of the estate of Erica Reith, reached a partial settlement agreement with the City of Kalamazoo, John Doe, an employee of the City of Kalamazoo, and Lampoon, Inc. (collectively "Settling Defendants"). Plaintiffs move for Court approval of this settlement agreement. Amtrak, the only defendant that did not reach a settlement with Plaintiffs, objects to this settlement agreement. The Settling Defendants support the motion.

## **I. Facts**

In this wrongful death action, Erica Reith, a 19-year old student, was killed when her vehicle collided with an Amtrak train on July 8, 2003. Investigation shows that the accident was caused by the failure of a signal light erected at the intersection of the railroad track and the public street where Reith was traveling. It is claimed that before the crash, Amtrak, the City of Kalamazoo, John Doe, and Lampoon had duties to maintain the signal, were all aware that the signal was not functioning, but they did not remedy the problem.

All of the parties participated in this Court's voluntary facilitative mediation (VFM), which is a very admired program for alternative dispute resolutions pursuant to a local court rule. The trained mediator in this case, Jon R. Muth, was president of the State Bar of Michigan. The purpose of the program is, of course, to enable parties to reach fair resolutions of their disputes before expending large sums on attorneys fees and other increasingly oppressive costs related to litigation. The program has been very effective in that between 65 and 70 percent of the cases submitted to VFM settle.

In the instant case, two out of the three defendants wish to settle with Plaintiffs for a total of $500,000. Amtrak does not wish to settle at this time.

The settlement agreement is conditional in that the Settling Defendants claim they will not settle if they can be brought back into the litigation to contribute to the judgment against or settlement with Amtrak or another party. To address this concern, the settlement agreement provides: 1) Amtrak cannot file any claims in the future against the Settling Defendants; 2) Plaintiffs, having settled with the Settling Defendants, may not again release the liability of these Settling Defendants in any subsequent settlement with Amtrak; and 3) Plaintiffs will not settle with Amtrak or any other party unless the party waives any right to contribution from the Settling Defendants.

Amtrak does not object to the settlement, *per se*. However, Amtrak contends that the Court cannot limit Amtrak's "future rights" and preclude Amtrak from filing claims against the Settling Defendants or third parties. On the other hand, Plaintiffs argue that public policy encourages settlements and that the Settling Defendants will enter into the settlement only when it is full and final, and thus any right that Amtrak has to bring future claims against the Settling Defendants will render the settlement agreement meaningless. Plaintiffs argue that Amtrak does not have the right to file a future claim for contribution. Plaintiffs contend that it is not necessary for Amtrak to reserve

2

its right to file future claims because Michigan law guarantees that Amtrak will not pay more than its fair share of liability. Plaintiffs say that Amtrak maintains the right to file a notice of non-party fault under Michigan law.[1]

The City of Kalamazoo, which is contributing by far the greatest portion of the settlement, states that it is concerned about future liability to Amtrak because of the recent Michigan Supreme Court case of *Gerling Konzern Allgemeine Versicherungs AG v. Lawson*, 472 Mich. 44, 693 N.W.2d 149 (2005). Settling Defendants are concerned that *Gerling* might allow Amtrak to settle with Plaintiffs and then seek "additional" contribution from Settling Defendants.

## II. Discussion

### A. Contribution Right Among Tortfeasors

In *Gerling*, the court held that, pursuant to M.C.L. § 600.2925a, a *settling* defendant had the right to contribution from other responsible tortfeasors who did not settle. The court pointed out that as part of the state's tort reform legislation, Michigan eliminated joint and several liability in certain tort actions, those involving common liability such as the same wrongful death, by, among other things, requiring that the factfinder in such actions allocate the percentage of fault among all responsible tortfeasors, and providing that each tortfeasor need not pay damages in an amount greater than its allocated percentage of fault. 472 Mich. at 51, 56, 693 N.W.2d at 152, 155. The court said that the legislation rendered unnecessary most claims for contribution. *Gerling* recognized the important point that courts encourage settlement, and, in fact, the Michigan Supreme Court's ruling in *Gerling* promoted settlement because it gave an incentive to the only named defendant to settle with the only plaintiff – a hope to recover at least some of the settlement costs from other potentially

---

[1] Plaintiffs also request the Court to determine whether the decedent consciously suffered. Amtrak objects to this and states that such determination is irrelevant to court approval of the settlement agreement. This dispute was handled in open court when the Court determined that the conscious suffering determination would not be binding upon Amtrak.

responsible tortfeasors who could not be brought into the Court of Claims. All *Gerling* holds is that settling defendants can seek contribution from non-settling defendants. It does not hold that settling defendants can seek contribution from other settling defendants.

In this Court's judgment, to allow settling defendants to seek contribution from other parties that had previously settled would stifle any meaningful reason for any partial settlement. All defendants who wish to settle would be held hostage to the most unreasonable co-defendants or the defendant with the most to lose. (The Court is not suggesting that Amtrak is unreasonable in not settling or that it has more to lose than its co-defendants.) A statute such as the tort reform legislation must be read as a whole. The Michigan tort reform legislation recognizes and resolves the potential problem of the nervous settling party:

> If a release or a covenant not to sue or not to enforce judgment is given in good faith to 1 of 2 or more persons for the same injury or the same wrongful death, both of the following apply:
> (a) The release or covenant does not discharge 1 or more of the other persons from liability for the injury or wrongful death unless its terms so provide.
> (b) *The release or covenant discharges the person to whom it is given from all liability for contribution to any other person for the injury or wrongful death.*

M.C.L. § 600.2925d (emphasis added). *See also Conkright v. Ballantyne of Omaha, Inc.*, 496 F. Supp. 147, 152 (W. D. Mich. 1980) ("The Michigan contribution statute provides that a release of one of two or more joint tortfeasors discharges the party released from all liability for contribution . . . ."). The settling tortfeasor's shield from further liability provides a strong incentive to settle. "A joint tortfeasor has an incentive to settle a case only if the amount agreed upon represents the final and total liability that will have to be paid for the matter to any party." *Miller v. Riverwood Recreation Ctr., Inc.*, 215 Mich. App. 561, 569, 546 N.W.2d 684, 688 (1996).

> It is logical to assume that joint tortfeasor [sic] will be more likely to enter into settlement negotiations with a plaintiff if they know they will not be entitled to contribution if the other tortfeasor settles and they do not. Since this state of facts

4

reasonably supports the legislation's objective, it cannot be said to violate due process.

*West v. Rollhaven Skating Arena*, 105 Mich. App. 100, 104, 306 N.W.2d 408, 410 (1981). A policy that encourages settlements is more important than a policy that would allow contribution among joint tortfeasors, and thus the discrimination against non-settling tortfeasors does not violate equal protection. *Id.* at 105-106, 306 N.W.2d at 411.

So, it appears to this Court that the Settling Defendants are protected by both subparts of § 600.2925d: (a) Any agreement with Amtrak will be conditioned upon the agreement not to pursue the Settling Defendants; and (b) even if Amtrak does sue the Settling Defendants, the Settling Defendants are protected because they settled with Plaintiffs.

Also, the possibility that the Settling Defendants can be sued for contribution by Amtrak or another party is blocked by Plaintiffs' agreement that they will not settle with anyone else unless the other party waives any right to contribution from the Settling Defendants. Even Amtrak, in oral argument, said that what the Plaintiffs and the Settling Defendants wanted to do in their private settlement agreement was up to them. This provision in the Settlement Agreement may make settlement more or less easy with Amtrak, but it is only one consideration that Plaintiffs and Amtrak will have in their considerations of whether to enter into a settlement.

Furthermore, Michigan tort reform legislation protects Amtrak if it goes to trial. M.C.L. § 600.6304 abolishes joint and several liability in cases such as the instant case. A person who goes to trial "shall not be required to pay damages in an amount greater than his . . . percentage of fault as found under subsection 1." M.C.L. § 6304(4). If Amtrak goes to trial, it can defend and seek to apportion liability to the "empty chairs" as it deems fit – "We weren't responsible. It was the City of Kalamazoo's fault." (This is a characterization, not a true quote.) Amtrak will be held liable only for the amount of loss for which the factfinder holds it responsible. Thus, Amtrak is not deprived

5

of any right to contribution if it goes to trial because it will not be held responsible for more than its fair share of the liability.

Finally, there is the problem that Amtrak raised at oral argument - "It wasn't necessarily our fault. Windemuller Electric had a contract with the City of Kalamazoo to maintain the light and it failed to do so." (Another characterization.) The City denies any such contract. Nothing in the settlement agreement prohibits Amtrak from trying to bring Windemuller Electric into the case. And if there is such a contract, the City, in paying $490,000 to the Plaintiffs, is making a significant contribution to any settlement whether it is directly responsible or responsible through its independent contractor. It seems to this Court that if Windemuller had such a contract with the City, the City would already have brought Windemuller into the case.

The possibility of another potential defendant causing any settlement to stall is a problem the parties must work out themselves. This Court does not want to determine any issue, whether clear or not clear, regarding any party that has not had an opportunity to be heard. The City said at oral argument that it had no contract with Windemuller to fix the light. And, even if it did, it seems that the City, and not Windemuller, as the actual wrongdoer would have the claim for contribution or indemnity. That is, it is difficult to determine the scenario by which Windemuller could sue the City because Windemuller breached its contract with the City. The Court does not see Windemuller as a problem for the City, but the Court is not the lawyer for the City, and if this "kills the deal" for the City, so be it.

**B.     Indemnification Right Among Tortfeasors**

Michigan law reserves the right of indemnification among tortfeasors:

(7) This section does not impair any right of indemnity under existing law. Where 1 tort-feasor is entitled to indemnity from another, the right of the indemnity obligee

6

>is for indemnity and not contribution, and the indemnity obligor is not entitled to contribution from the obligee for any portion of his indemnity obligation.

M.C.L. § 600.2925a.

"Common law indemnity is based on the equitable principle that where the wrongful act of one results in another being held liable, the latter party is entitled to restitution from the wrongdoer." *Hill v. Sullivan Equip. Co.*, 86 Mich. App. 693, 696, 273 N.W.2d 527, 529 (1979). "Generally, indemnification is an equitable doctrine that shifts the entire burden of judgment from one tortfeasor who has been compelled to pay it, to another whose active negligence is the primary cause of the harm." *St. Luke's Hosp. v. Giertz*, 458 Mich. 448, 453, 581 N.W.2d 665, 668 (1998).

>Indemnity should be distinguished from contribution. Contribution distributes a loss among joint tortfeasors, requiring each to pay its proportionate share; indemnity shifts the entire loss from the party who has been forced to pay to the party who should properly bear the burden. The right to indemnity may arise, in the absence of an express agreement, to prevent a result regarded as unjust or unsatisfactory where the relationship between the parties entitles the one held liable to shift its total loss.

*Langley v. Harris Corp.*, 413 Mich. 592, 597, 321 N.W.2d 662, 665 (1982) (citation omitted).

Accordingly, to be entitled to common law indemnity, the party seeking it must be free of active negligence or fault. *St. Luck's Hosp.*, 458 Mich. at 454, 581 N.W.2d at 668. *See also Peeples v. City of Detroit*, 99 Mich. App. 285, 292, 297 N.W.2d 839, 842 (1980) (holding that a party seeking common law indemnity must plead and prove freedom from personal fault). To determine whether the party seeking indemnification was "actively" or "passively" negligent, the court must examine the primary plaintiff's complaint. *Feaster v. Hous*, 137 Mich. App. 783, 787, 359 N.W.2d 219, 222 (1984). "If that complaint alleges 'active' negligence, as opposed to derivative liability, the defendant is not entitled to common-law indemnity." *Peeples*, 99 Mich. App. at 293, 297 N.W.2d at 842.

This Court concludes that Amtrak does not have any right to seek indemnification from the Settling Defendants because the complaint alleges that Amtrak was actively negligent. Count II of the complaint alleges that:

> 16. Defendant Amtrak had a duty to inspect, test, repair, adjust, replace and maintain the railroad crossing warning device pursuant to 49 USC §§ 20101 *et seq.*, 23 U.S.C. § 130, 23 CFR §§ 646.200 *et seq.*, and 49 CFR 234 *et seq.*[.]
> . . .
> 18. Defendant Amtrak breached said duties by failing to adequately and fully inspect, test, repair, adjust, repair [sic] and maintain the railroad crossing warning device.

(Compl. ¶¶ 16 & 18.)

The plain language of the complaint alleges Amtrak of active negligence. Indeed, Amtrak's negligence may be the primary cause of the accident. Therefore, Amtrak is not entitled to seek indemnification from the Settling Defendants.

A separate Order will issue.


Dated: May 16, 2005                 /s/ Gordon J. Quist
                              GORDON J. QUIST
                           UNITED STATES DISTRICT JUDGE