UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

DIANE CONMY and MICHAEL B. REITH,

    Plaintiffs,

v.                                                                                                    Case No. 4:04-CV-105

AMTRAK, CITY OF KALAMAZOO, JOHN                              HON. GORDON J. QUIST
DOE and LAMPOON, INC.,

    Defendants.
_____/

**OPINION**

    This case arises out of a fatal collision between a car driven by decedent Erica Reith and an Amtrak passenger train.  Plaintiffs Diane Conmy and Michael Reith, co-personal representatives of the estate of Erica Reith, contend that the accident was caused by the failure of a signal light erected at the intersection of a railroad track and a public street where Reith was traveling.  Plaintiffs sued the City of Kalamazoo, John Doe (an employee of the City of Kalamazoo), and Lampoon Inc., owner of a Jimmy John's restaurant, out of whose parking lot Reith was exiting when she was struck by the train.  Plaintiffs have settled their claims against all parties save Amtrak.  Plaintiffs' claim against Amtrak is grounded upon two theories.  First, Plaintiffs maintain that Amtrak had a duty (which it breached) to inspect and maintain the warning device that was not working at the time of the accident.  Second, Plaintiffs assert that because Amtrak knew that the warning signal did not work, it had a duty (which it breached) "to operate its train in a manner which would have allowed it to avoid the collision given the non-working status of the signal."  (Pls.' Resp. Amtrak's Mot. Partial

Summ. J. at 2.) Amtrak has moved for summary judgment with respect to Plaintiff's first theory. For the following reasons, the Court will deny Amtrak's motion for partial summary judgment.

## Background

On July 8th, 2003, Erica Reith, a 19 year-old college student, upon turning left out of a Jimmy John's parking lot, was struck by an Amtrak train at a railroad grade crossing over W. Michigan Ave. in Kalamazoo, Michigan. Half-roadway gates and flashing lights prevent traffic from proceeding on W. Michigan Ave. over this grade crossing when the crossing is in use. These roadway gates and flashing lights were installed pursuant to an order of the Michigan Public Service Commission in 1963, after it received a request from the Michigan State Highway Department for approval of these warning devices. (Pls.' Resp. Amtrak's Mot. Partial Summ. J. Ex. 1 Attachment B.) The half-roadway gates and flashing lights, however, do not prevent a vehicle turning left out of the Jimmy John's parking lot in order to proceed east on W. Michigan Ave. from crossing the tracks. This is so because the half-roadway gate and flashing lights intended to prevent traffic from proceeding east on W. Michigan Ave. when the crossing is in use are located 120 feet west of the parking lot exit. To remedy this problem, the Railroad Safety Inspection Section of the Michigan State Highway Department recommended in March 1978 that a "No Left Turn" when flashing signal be placed "immediately south of West Michigan Avenue facing motorists coming out of the [parking lot] onto Michigan Ave." (*Id.* Ex. 1 Attachment A.) The City of Kalamazoo ultimately installed such a signal in February 1979. (*Id.* Ex.1 Attachments C and D.) On July 8, 2003, when Reith turned left out of the parking lot, the "No Left Turn" signal was not operating. As she was making her left turn into the right lane to proceed east on W. Michigan Ave., an Amtrak passenger train traveling northeast across W. Michigan Ave. struck Reith's car. Reith died six days later as a result of the injuries she

2

sustained in the collision.

## Discussion

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986)).

Amtrak asserts that it is entitled to summary judgment on Plaintiffs' claim that Amtrak had a duty to maintain the "No Left Turn signal. Amtrak cites M.C.L. § 257.668(2) which reads:

> The erection of or failure to erect, replace, or maintain a stop or yield sign or other railroad warning device, unless such devices or signs were ordered by public authority, shall not be a basis for an action of negligence against the state transportation department, county road commissions, the railroads, or local authorities.

Amtrak maintains that this statute provides that "no negligence action may be instituted against [it for] any alleged failure to install or maintain [the 'No Left Turn' signal] in the absence of an order requiring such action by the Michigan Department of Transportation (MDOT)." (Br. Supp. Amtrak's Mot. Partial Summ J. at 2.) Since MDOT never issued an order with respect to either the installation or maintenance of the "No Left Turn" signal, Amtrak concludes, it is entitled to summary judgment with respect to Plaintiffs' claim that it had a duty to maintain the signal.

3

Plaintiffs, in response, offer a number of arguments in an attempt to establish that a question of fact exists as to whether MDOT did issue an order with respect to the "No Left Turn" signal.[1] The Court finds these arguments unpersuasive. First, Plaintiffs maintain that a document entitled "Report of March 23, 1978 Investigation," (Pls.' Resp. Amtrak's Mot. Partial Summ. J. Ex. 1 Attachment A.), constitutes an order from MDOT. Plainly, this document is what it purports to be: a Railroad Safety Inspection Section investigator's report of his investigation. In this report, it is true, the investigator does recommend that a "No Left Turn" signal be placed south of W. Michigan Ave. facing motorists coming out of the parking lot. It is not, however, an order from MDOT directing the installation or maintenance of the "No Left Turn" signal.

Plaintiffs also argue that MDOT's order of 1963, which ordered the erection of flashing lights and the placement of half-roadway gates to prevent traffic on W. Michigan Ave. from traveling through the railroad grade crossing when the crossing is in use, could apply to subsequently installed devices, including the "No Left Turn" signal, which was installed in early 1979. Besides this conclusory assertion, Plaintiffs offer no support for this argument. The 1963 order relates simply to the installation of the half-roadway gates and flashing light signals that were installed pursuant

---

[1] The Court concludes that whether a public authority ordered the erection of a warning device is a question of fact. If the statute had defined what constitutes an order, and if a document exists that a party purports constitutes an order, then it would be a question of law as to whether that document is an order as defined by the statute. In this case, however, the word "order," as used in M.C.L. § 257.668(2), is not defined in the statute. Plaintiffs note that the Railroad Code of 1993, M.C.L. § 462.107(4), does define "order," and they maintain that this definition should serve as the definition of "order" as used in M.C.L. § 257.668(2). The word "order," as defined in M.C.L. § 462.107(4), cannot serve as the definition of "order" as used in M.C.L. § 257.668(2) for two reasons. First, the language in M.C.L. § 257.668(2) "unless such devices or signs were ordered by public authority" was added in 1980. The Railroad Code, in which "order" is defined, was not enacted until 1993. It is implausible to conclude that a statute enacted in 1993 could provide the definition of a word in a statute written in 1980. Second, M.C.L. § 462.107(4) defines "Order" as an "administrative document, signed by the department director or his or her designee." The statute defines "department" to mean "the Michigan Department of Transportation." M.C.L. § 462.105(4). Thus, an "Order," as defined by this statute, is one that is issued only by the Michigan Department of Transportation. However, as explained below, M.C.L. § 257.668(2) does not limit the public authority that can order the erection of a warning device to MDOT.

to this order. This order cannot be construed as an MDOT order with respect to the "No Left Turn" signal, which was installed 16 years after the issuance of this order.

Finally, Plaintiffs claim that an MDOT order for the installation of the "No Left Turn" signal was likely issued, but MDOT may have purged the record. In support of this contention, Plaintiffs note that in response to a Freedom of Information Act request seeking a directive from MDOT to place a "No Left Turn" sign at the railroad crossing, the state explained that no such document could be found and that the document may have been purged from the government's records. (Pls.' Resp. Amtrak's Mot. Partial Summ. J. Ex. 1 Attachment E.) Plaintiffs further note that the transmittal cover page to the 1978 investigation report provided that since the "No Left Turn" signal is considered a construction improvement, "a Commission Order [would] be drafted for compliance . . . within thirty days." Plaintiffs argue, then, that MDOT likely did issue an order with respect to the "No Left Turn" signal, but the order was probably purged from the government's records.

This argument fails to create an issue of fact as to whether MDOT issued an order with respect to the "No Left Turn" signal. First, both the former and current Manager of the Rail Safety Section of MDOT testified that had such an order been issued, it would have been maintained. (Becker Aff. ¶ 5(b); Hissong Aff. ¶ 4(b).) The current manager of MDOT's Rail Safety Section testified that "[a]s a matter of policy, MDOT does not 'purge' or otherwise destroy an Order issued by MDOT relating to the installation of any type of warning device at a public railroad grade crossing in the State of Michigan." (Hissong Aff. ¶ 4(c).) Moreover, Plaintiffs admit that they received the 1963 order, which relates to the same crossing where the "No Left Turn" signal was installed, from MDOT. (Aff. Konning ¶ 7.) The existence of the 1963 order belies Plaintiffs' contention that MDOT purged an order issued in 1978 or 1979.

Although the Court agrees with Amtrak that Plaintiffs have failed to show that a question of fact exists as to whether MDOT issued an order relating to the "No Left Turn" signal, Amtrak is incorrect to the extent it maintains that, pursuant to M.C.L. § 257.668(2), for a plaintiff to prosecute a negligence action against a railroad for failure to maintain a warning sign, MDOT must have been the public authority that ordered the warning sign. The statute does not define "public authority." The Michigan courts interpreting this statute, however, have concluded that "public authority" means *any* public authority. *Edington v. Grand Trunk W. R.R. Co.*, 165 Mich. App. 163, 168, 418 N.W.2d 415, 417 (1987). In *Edington*, a wrongful death action arising out of an automobile-train collision that occurred at a railroad crossing located on a county road under the exclusive jurisdiction and control of the county, plaintiffs sued the county road commission alleging that it was negligent in failing to "install . . . devices adequate to warn motorists of an approaching train." *Id*. at 165, 418 N.W.2d at 416. The county road commission moved for summary judgment pursuant to M.C.L. § 257.668(2) on the ground that no public authority had ordered the installation of a warning device at the subject crossing. *Id*. The trial court concluded that the statute did not protect the road commission from suit for failure to install a warning device where it was the authority responsible for determining the need for such signs. *Id*. at 166, 418 N.W.2d at 416. Rather, the trial court continued, the statute protects the road commission only where "some other agency was the 'public authority' who could order the erection of . . . warning devices." *Id*. The court of appeals disagreed, holding that the plain language of the statute indicates that "public authority" means any public authority. *Id*. at 168, 418 N.W.2d at 417. Thus, a public authority that erects a warning device need not have been ordered by a different (higher-up) public authority for the warning device to have been ordered by public authority. Rather, a public authority may "order a warning device" when it itself

6

decides to install a warning device.

In this case, a question of fact exists as to whether Kalamazoo ordered the installation of the "No Left Turn" signal. To find that a public authority ordered the installation of a warning device, there are no technical requirements with respect to what constitutes an "order." As noted above, the statute does not define "order" as used in M.C.L. § 257.668(2). Webster defines "order" as "to require or direct (something) to be done." Webster's Third New International Dictionary 1588 (1971). In a memo dated October 4, 1978, Kalamazoo's assistant city engineer informed Kalamazoo's city manager of the Railroad Safety Inspection Section investigator's report in which the investigator recommended that a "No Left Turn" signal be installed on Michigan Ave. facing the subject commercial parking lot. (Pls.' Resp. Amtrak's Mot. Partial Summ. J. Exhibit 1 Attachment D.) The memo notes that the owner of the commercial property whose patrons the "No Left Turn" signal was designed to protect agreed to share the cost for the installation of the warning device with the City. (*Id.*) Moreover, on March 12, 1979, in a response to a letter from the Railroad Safety Inspection Section investigator who recommended that the "No Left Turn" signal be installed (who apparently inquired into the reasons for the delay in the installation of the "No Left Turn" signal), Kalamazoo's assistant city engineer responded:

> It might be pointed out that the time span *between ordering and implementing this installation* was mainly occasioned by preparation and ratification of a cost sharing agreement between City and owner of the commercial driveway, dealings with the power company regarding power, scheduling Conrail's signal hook-up, and winter weather.

(*Id.* Exhibit 1 Attachment C.) (emphasis added). Thus, since a question of fact exists as to whether Kalamazoo directed or ordered the installation of the "No Left Turn" signal, M.C.L. § 257.668(2) does not preclude the prosecution of a negligence action against Amtrak for its alleged failure to

7

maintain the "No Left Turn" signal.

The Court notes that simply because M.C.L. § 257.668(2) is not a bar to the prosecution of Plaintiffs' sign maintenance claim does not mean that Amtrak therefore had a duty to maintain the signal. But this argument is for another day, as Amtrak moved for summary judgment only on the ground that M.C.L. § 257.668(2) precluded the prosecution of a negligence action against it for failing to maintain the "No Left Turn" signal. Amtrak has not moved for summary judgment on the ground that it did not have a duty to maintain the "No Left Turn" signal.

## Conclusion

Since the Court concludes that an issue of fact exists as to whether the City of Kalamazoo ordered the installation of the "No Left Turn" signal, M.C.L. § 257.668(2) does not preclude the prosecution of a negligence action against Amtrak for failure to maintain the signal. Therefore, Amtrak's motion for partial summary judgment will be denied.

An Order Consistent with this Opinion will be entered.

Dated:  November 22, 2005                              /s/ Gordon J. Quist         
                                                    GORDON J. QUIST
                                              UNITED STATES DISTRICT JUDGE